**FEDERAL TRADE COMMISSION,**
**Plaintiff-Appellant,**

v.

**Milton SHAFFNER, Defendant-Appellee.**

No. 79–2556.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1980.

Decided July 14, 1980.

Charles David Nelson, F.T.C., Washington, D. C., for plaintiff-appellant.

Robert C. Goldberg, Freeman, Atkins & Coleman, Ltd., Chicago, Ill., for defendant-appellee.

Before SWYGERT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and WOOD, Circuit Judge.

KILKENNY, Circuit Judge.

## STATEMENT OF THE CASE

The Federal Trade Commission (the FTC), pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* and the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, and 50 is investigating debt collection practices. As part of its investigation, the FTC issued a subpoena *duces tecum* to appellee, an Illinois attorney who admittedly devotes most of his practice to collecting debts. Appellee refused to comply with the subpoena, and the FTC petitioned the district court for enforcement. The district court enforced the subpoena in part and denied enforcement in part. The FTC appeals. We affirm in part and reverse in part.

## PROCEEDINGS BELOW

On August 29, 1978, the FTC promulgated a resolution directing the use of compulsory process to investigate debt collection practices. The resolution recited the authority to conduct the investigation and the statutes giving the FTC the authority to issue compulsory process in aid of its investigations. On February 1, 1980, the FTC issued a subpoena *duces tecum* containing eleven specifications directed to appellee.

Appellee moved the FTC to quash the subpoena. The motion was denied. Subsequently, he agreed to comply with nine of the eleven subpoena specifications, but refused to produce any material under two of the specifications.[1] His primary objection was that the FTC was requiring him to disclose privileged communications between his clients and himself. He also objected to the FTC's jurisdiction and to the scope of the subpoena. In any event, no documents were produced.

Thereafter, the FTC petitioned the district court for enforcement of its subpoena in its entirety. The district court granted the petition, but excluded specifications sev-

---

* The Honorable John F. Kilkenny, Senior United States Circuit Judge of the Ninth Circuit Court of Appeals, is sitting by designation.

1. The two specifications to which appellee specifically objected were numbers seven and ten. Specification seven demanded:

"Such documents, or in lieu thereof, a verified written statement, as will describe or reveal:

(a) The firm's policy and procedure for handling consumer complaints including but not limited to:

(1) a list of consumers, their addresses and telephone numbers, who have filed complaints in writing with the firm since January 1, 1977;

(2) a list of consumers, their addresses and telephone numbers, who have filed a lawsuit against the firm since January 1, 1977;

(3) the record keeping or other system by which the firm maintains records or destroys such complaints;

(4) a copy of each written

(i) complaint

(ii) request for verification of a debt or to cease collection activity by the firm; and

(iii) notification that the debt is in dispute or refusual [sic] to pay received by the company since January 1, 1977;

(5) a copy of the company's response to each written complaint since January 1, 1977;

(6) the record keeping system maintained by the firm for recording oral complaints;

· (7) the firm's policy for honoring oral requests by consumers for verification of the debt."

Specification ten demanded:

"Copies of the *complete* file (including all material therein) for each consumer with surnames starting with the letters A, B, H, J, L, S and W, from January 1, 1977 to the return date.‹ If the number of consumer files to be submitted in response to this request will be less than fifty (50), then this request shall additionally include the letters C, R, and M."

en and ten from the enforcement order. Although the district court's order does not state the specific grounds for refusing to enforce the subpoena in its entirety, it is apparent that the court was not prepared to issue an order it considered would open an attorney's files.[2] Appellee has since responded to all the specifications, save numbers seven and ten.

### ISSUES

I. Whether the FTC's investigation of appellee's business is beyond the scope of its statutory authority.

II. Whether enforcement of specifications seven and ten would violate privileged communications or other protected interests.

III. Whether enforcement of specifications seven and ten is unduly burdensome.

### I.

Finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," contributing to bankruptcies, marital instability, loss of jobs, and invasions of privacy, Congress passed the Fair Debt Collection Practices Act to remedy the abusive practices.[3] 15 U.S.C. § 1692. Although Congress intended the Act to be enforced primarily by consumers, Senate Report No. 95–382, 95th Cong., 1st Sess. 5, reprinted in (1977) U.S.Code Cong. & Admin.News, pp. 1695, 1699, it also authorized the FTC to consider violations of the Act unfair and deceptive practices under the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.*, and to use all its functions and powers to enforce compliance with the Fair Debt Collection Practices Act. 15 U.S.C. § 1692*l*.

Appellee contends that the FTC has no power to investigate him because the Act specifically excludes "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from those defined as "debt collectors." 15 U.S.C. § 1692a(6)(F). He argues that since he is merely representing his numerous clients in efforts to secure payments of debts, not only is it impossible for him to be liable under the Act, he also cannot even be a subject of an investigation. In sum, he contends that the FTC, by virtue of the statutory exclusion, is without jurisdiction to investigate him.

■ Historically, federal courts have been reluctant to interfere in agency investigations. As the Supreme Court said in *Okl. Press Pub. Co. v. Walling,* 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946): "[C]ongress has authorized the [agency], rather than the district courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise [its] subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey [its] subpoena, issued according to the statute's authorization, to have the aid of the district court in enforcing it." When faced with a question very similar to the

---

**2.** At a hearing on a motion brought by the FTC to amend the district court's order, the FTC argued that it was only seeking information from and about consumer debtors, not appellee's clients, and that the court should not have excluded specifications seven and ten on the ground the specifications would force a breach of the attorney-client privilege. The district court responded:

"I think I had better let the Court of Appeals pass on that question. This is so involved and this is far reaching.

"If that order is granted it is far reaching. It would open up attorneys' files. It is a far reaching thing.

"I think I had better deny this and let this appealable order go and let the Court of Appeals pass on it. I think this is important enough to get a decision from them rather than if left here because we will just be running into a tremendous amount of litigation."

**3.** The Act is comprehensive in its regulation and forbids any agency to promulgate any rules or regulations with respect to the collection of debts by debt collectors as defined in the Act. 15 U.S.C. § 1692*l* (d).

one presented to us here,[4] this court said the *Oklahoma Press* rule means "appellants may not litigate the jurisdictional issue as a defense in a subpoena enforcement proceeding." *FTC v. Feldman*, 532 F.2d 1092, 1096 (CA7 1976), quoting *FTC v. Gibson*, 460 F.2d 605, 608 (CA5 1972). Nevertheless, there are three circumstances under which a party can challenge the authority of an agency to issue a particular subpoena, where: "(1) the agency has clearly violated a right secured by statute or agency regulation; (2) the issue involved is a strictly legal one not involving the agency's expertise or *any factual determinations*; or (3) the issue cannot be raised upon judicial review of a later order of the agency." (Citations omitted) (Emphasis supplied) *FTC v. Feldman*, *supra*, at 1096.

■ Appellee contends all three of the exceptions are present here. First, he argues that the FTC is clearly violating his right to be free from investigation secured by the Fair Debt Collection Practices Act. While the statute clearly excludes "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of a "debt collector," it does not state that an attorney, by reason of mere possession of a license to practice law, is not subject to the compulsory process of the FTC. The statutory exclusion does not merely say "any attorney-at-law," it says "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." While the exclusion is not a narrow one, it is readily apparent that Congress did not intend to vest in every attorney a right to be free from investigation. Needless to say, many who hold licenses to practice law, do not practice law, but engage in other businesses. We do not believe Congress intended to shield one debt collection business from investigation simply because it is owned by an attorney, while subjecting other debt collectors to scrutiny by the FTC. The compulsory proc-

ess of the FTC may be used to determine whether an attorney is in fact acting as an attorney practicing law, or in some other capacity.

Appellee also contends that the issue involved is strictly a legal one not involving agency expertise or factual determinations. While we agree that the construction of the meaning of the statutory exclusion relating to attorneys is a question of law not requiring any agency expertise for proper resolution, the question of whether appellee can be held liable under the Act turns on the resolution of questions of fact on whether he falls within the statutory exclusion. For instance, appellee may advertise his business as a debt collection agency rather than a law practice, and might employ several employees for the purpose of soliciting debt collection business or contacting debtors to secure payment of accounts; activities which may not fall within the statutory exclusion. We do not address the question of whether appellee has a defense under the statutory exclusion relating to attorneys, for the record on that question is incomplete. We do say that there may be issues of fact bearing on the legal question of whether appellee's activities fall within the statutory exclusion. The FTC's subpoena is properly designed to illuminate these questions. *SEC v. Savage*, 513 F.2d 188, 189 (CA7 1975).

Next, appellee argues that the issue of jurisdictional coverage cannot be raised on judicial review of a later order of the agency, because a decision to enforce the subpoena necessarily decides the jurisdictional question and results in the opening of his files, an act which cannot be undone. This argument fails to recognize the difference between the question of the power of the FTC to investigate and the question of whether appellee has a defense under the facts to a complaint brought under the Act. The power of the FTC to proceed with an

---

4. One of the three questions addressed in *United States v. Feldman*, 532 F.2d 1092 (CA7 1976) was whether the doctrines of *res judicata* or collateral estoppel prevented enforcement of an FTC subpoena. The court held that the sub-

poena was properly designed to illuminate questions of fact and law and that the appellants could more appropriately assert their defenses at any proceeding the FTC might later bring.

investigation does not hinge on whether the subject of the investigation can prove a statutory defense. The investigation may convince the FTC investigators that appellee's business falls within the statutory exclusion and that no charge under the Act should be filed. Even if a complaint is filed, appellee will have the opportunity to assert his defense at an adjudicative administrative hearing. Ultimately, review of any final FTC decision is available under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* Consequently, there is no merit to appellee's contention that the issue cannot be raised upon judicial review of a later agency order.

Appellee also argues that the FTC has no jurisdiction to investigate his business for the reason that it is conducted wholly within the confines of Cook County, Illinois and is not in interstate commerce. Here again, the subpoena is likely to shed light on this question and he can raise the objection at any later administrative hearing. Moreover, we note that he has admitted that he uses an instrumentality of interstate commerce, the telephone, and that it is not necessary that appellee be engaged in interstate commerce. Even businesses purely intrastate in character can be subject to federal regulation if they directly affect interstate commerce.

## II.

■ Appellee vigorously argues that complying with specifications seven and ten of the subpoena would require him to reveal confidential communications between his clients and himself. However, it is readily apparent that specification seven seeks information regarding complaints from debtor consumers and the procedures for handling those complaints. It does not seek any information relating to communications between appellee and his clients.[5] Likewise, specification ten demands production of consumer files, not client files.[6] Obviously, appellee cannot have an attorney-client relationship with parties on both sides

of a debt collection dispute, nor can his clients assert a right to shield appellee's office policies and procedures from disclosure. Complaints from consumers and communications between appellee and the debtors do not fall within the attorney-client privilege.

■ Moreover, appellee merely asserted a blanket claim of privilege as to all the documents subject to specifications seven and ten. This court in *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 324 (CA7 1963), specifically disapproved blanket assertions of attorney-client privilege, saying: "The limitation surrounding any information sought must be determined for each document separately considered on a case-by-case basis." The burden is on the party claiming the privilege to present the underlying facts demonstrating the existence of the privilege. *United States v. Tratner*, 511 F.2d 248, 251–52 (CA7 1975). This is not to say that the party must detail the contents of each communication, for that would indeed violate the privilege. But the party must supply the court with sufficient information from which it could reasonably conclude that the communication: (1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and (4) is at the client's instance permanently protected. *Radiant Burners, supra*, at 319. Appellee failed to provide such information and the district court clearly erred in accepting his blanket claims of privilege.

■ We find appellee's argument that to disclose the information in his files relating to consumer debtors and their complaints would violate their privacy rights under the Fair Debt Collection Practices Act without merit. The invasions of individual privacy the Act was intended to remedy were the invasions committed by debtor collectors, not the FTC. To accept that argument would be to accept a rule that would fly in the fact of the Act's provisions giving the

---

**5.** See note 1, *supra*.

**6.** *Id.*

FTC the authority to investigate abusive debt collection practices. The FTC can hardly be expected to conduct a thorough investigation without acquiring information on consumer debtors and their complaints. Moreover, this investigation is a private rather than a public investigation.[7] Whatever invasions of privacy that might occur have been limited to the extent possible.

### III.

Appellee urges that the subpoena should not be enforced for the reason that compliance would require disruption of his business. Needless to say, any subpoena places a burden on the person to whom it is directed. Time must be taken from normal activities and resources must be committed to gathering the information necessary to comply. Nevertheless, the presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest. A court will take steps to modify or to exclude portions of a subpoena only where the party objecting to the subpoena carries the difficult burden of showing that the demands are *unduly burdensome* or *unreasonably broad*. *FCT v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977), *cert. denied* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072.

What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question. However, a court may take steps to modify investigative subpoenas where they threaten to seriously impair or unduly disrupt the normal operations of the business. In this regard, a district court may impose reasonable conditions and restrictions on the manner and time of production. *FTC v. Texaco, Inc. supra,* at 881; *SEC v. Savage, supra,* at 189. The district

court's determinations on these matters will not be overturned absent abuse of discretion.

As noted above, the precise reasons the district court did not enforce the subpoena in its entirety are not altogether clear. The district court was most probably concerned that opening the files required by the subpoena would violate the attorney-client privilege. In any event, the record does not support a conclusion that the FTC's subpoena was unduly burdensome or unreasonably broad. To the extent the district court's exclusion of specifications seven and ten from its enforcement order rested on such an implicit finding, the exclusion was clearly wrong.

The only factual showings to support a conclusion of unreasonable burdensomeness are two statements in an affidavit by appellee. One statement listed the number of legal actions brought by his firm during 1978 and the other was a conclusory allegation that compliance with the subpoena would "severely interfere, disrupt and temporarily terminate [appellee's] legal practice." There was no showing of the number of files involved, the number of estimated work hours required to effect compliance, nor the estimated costs of compliance. The subpoena is limited itself by specification ten which asks only for files on consumers with surnames beginning with the letters A, B, H, J, L, S, and W[8] from January 1, 1977, to the return date of the subpoena. Moreover, we cannot help but note that appellee has already complied with, in his words, "eighty per cent" of the subpoena. We conclude that specifications seven and ten of the subpoena are not overly broad as written, nor unreasonably vague,[9] and that appellee failed to make an

---

7. The FTC's resolution authorizing the issuance of compulsory process had described the resolution as "public." The resolution was later amended *nunc pro tunc* to provide for a non-public investigation.

8. The letters C, R, and M were to be added to the list if the number of files under H, J, K, S, and W were less than fifty. See note 1, *supra*.

9. Appellee argues that the use of the term "consumer complaints" in the subpoena is unreasonably vague. To the contrary, we find the term very precise. The subpoena defines the term "consumer" as "any *person obligated or* allegedly obligated to pay money arising out of a transaction in which the money, goods, or services are used primarily for personal, family or household purposes."

adequate showing before the district court that compliance would be unreasonably burdensome.

Counsel for the FTC has assured this court that "The Commission stands ready to make reasonable accommodations to insure that disruption to appellee's business during compliance is minimized." We do not doubt the good faith of this assurance. In any event, should compliance threaten unwarranted interference, appellee may seek protective restrictions from the district court. *SEC v. Savage, supra,* at 189.

See also, 7 Cir., 602 F.2d 139.

### CONCLUSION

We conclude that the FTC's investigation into appellee's practice is not outside its statutory authority under the Fair Debt Collection Practices Act. The order of the district court is reversed insofar as it precludes enforcement of specifications seven and ten of the subpoena and the cause is remanded to the district court with instructions to enforce specifications seven and ten. Otherwise, the judgment is affirmed.